Succession of Bellocq.

No. 5983.

SUCCESSION OF FRANÇOIS BELLOCQ.

As the account of the administrator was homologated without any proof reduced to writing or otherwise, except as to the creditor who opposed it, the judgment, except as to said opponent, can not be maintained.

In this case the surviving widow and universal legatee alleges in her petition that the deceased left three minor children, to whom the law, of course, reserved two-thirds of the succession; yet, without demanding of them the possession or making them in any manner parties to the proceeding, this universal legatee obtained an *ex parte* order, sending her into " possession of all the property bequeathed to her by her late husband."

In the face of the positive provision of article 1607, Revised Code, which is the law applicable to this case, the universal legatee gets an *ex parte* order sending her into possession of the whole succession, notwithstanding, by operation of law, the heirs are seized of all the effects, have accepted the succession with the benefit of inventory, and the " universal legatee is bound to demand of them the delivery of the effects."

Under article 1670, Revised Code, the heirs can, at any time, take the seizin, etc. Here, however, the forced heirs of the deceased, to whom *is* reserved *two-thirds* of the succession, have made no application whatever. It is only the universal legatee, entitled to merely one-third of the estate and not confirmed by any order as natural tutrix of her minor children, nor having qualified as such, who has obtained an *ex parte* order to be put in possession. She certainly was not entitled to said order.

Under article 1607, Revised Code, the forced heirs " were seized of right by the death of their father of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects." This has not been done. Hence the order sending the universal legatee into possession was improvidently issued.

The executrix, by virtue of her office, owed duties to the creditors and also to the forced heirs of the deceased which this court will not permit her to disregard in acting for her personal interest and to their prejudice. The creditor who thought himself wronged by her tableau of homologation had the right to take this appeal.

This case falls clearly within the express provision of article 1607, and the universal legatee has not complied with the requirement thereof.

APPEAL from the Second District Court, parish of Orleans. *Tissot*, J. *A. Bodin*, for Mrs. Widow Bellocq, testamentary executrix, appellee. *C. R. Schmidt* and *J. A. Seghers*, for P. N. Canton, appellant.

WYLY, J. On the twenty-sixth day of June, 1874, François Bellocq died, leaving a small succession and three minor children. He also left a nuncupative will by public act, whereby he bequeathed to his surviving widow all his property. A creditor having applied to administer on the estate of the deceased, the surviving widow filed an opposition. Two days afterward, to wit: on the fifth of November, 1874, she presented a petition, alleging that of her marriage with deceased there were living three minor children (naming them), of whom she was entitled to the tutorship, and she presented the will and prayed that it be registered and executed, that an inventory be made, and for all necessary orders. The registry and execution of the will was ordered, and the surviving widow received letters testamentary. An under-tutor was appointed,

but no order was rendered confirming the surviving widow as natural tutrix, nor has she qualified as such.

On the fourth of February, 1875, the executrix filed an account setting down a large number of creditors as paid. Notice of the filing of the account was duly published, and only one creditor made opposition. Upon proof of the advertisement the court ordered the account to be approved and homologated so far as not opposed; and on the trial of the opposition of the creditor, Verriere, the court, after hearing evidence, dismissed it and ordered the final homologation of the account.

This was on the sixth of April, 1875. Seven days thereafter, to wit: on the thirteenth of April, 1875, the court rendered the following *ex parte* order: " Considering the prayer of the petition, let the petitioner," the surviving widow and executrix, " be put into possession of all the property bequeathed to her by her late husband."

Subsequently, to wit: on the twenty-third day of August, 1875, P. N. Canton, a creditor, set down on the tableau as paid, applied for and obtained appeals from the judgment homologating the account and the order sending the executrix into possession as universal legatee, on the ground that his claim, recognized for $1135 96, had not, in fact, been paid, notwithstanding the statement to that effect in the account. He also disclosed by his affidavit an appealable interest. 21 An. 336; 23 An. 768; 25 An. 3.

As the account was homologated without any proof reduced to writing or otherwise, except as to the creditor who opposed it, the judgment, except as to said opponent, can not be maintained.

"The testimony of witnesses in causes before the court of probate shall be taken in writing and annexed to the record, and a list shall be made of such documents as are produced by the parties and are annexed to the record, that they may be read on the appeal." Code of Practice, 1042; 8 An. 491; see, also, succession of Ross, 21 An. 511, and authorities there cited.

We come now to the *ex parte* order putting the executrix into possession as universal legatee. "The heirs can, at any time, take the seizin from the testamentary executor on offering him a sum sufficient to pay the movable legacies and on complying with the requirements of article 1012." Revised Code, article 1671.

Article 1607, however, provides that " when, at the decease of the testator, there are heirs to whom a certain portion of the property is reserved by law, these heirs are seized of right, by his death, of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament."

Article 352 provides that " it shall not be necessary for minor heirs to make a formal acceptance of a succession that may fall to them, but

such acceptance shall be considered as made to them with the benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance."

In Westholz vs. Retaud, 18 An. 285, it was held that "when, at the decease of the testator, there are heirs to whom a certain portion of the property is reserved by law, those heirs are seized of right, by his death, of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament."

In the case at bar the surviving widow and universal-legatee alleges in her petition that the deceased left three minor children, to whom, of course, the law reserved two-thirds of the succession; yet, without demanding of them the possession or making them in any manner parties to the proceeding, this universal legatee obtained an *ex parte* order sending her into "possession of all the property bequeathed to her by her late husband."

In the face of the positive provision of article 1607, which is the law applicable to this case, the universal legatee gets an *ex parte* order sending her into possession of the whole succession, notwithstanding by operation of law the heirs are seized of all the effects, have accepted the succession with the benefit of inventory, "*and the universal legatee is bound to demand of them the delivery of the effects.*"    *    *    *    *

In Fowler vs. Boyd, 15 L. 562, where an appeal was taken from the judgment discharging the rule to set aside the order sending the universal legatee into possession, on the ground that it was illegal and had issued improvidently, this court held that "it is only from forced heirs that a universal legatee *is bound to demand the delivery* of the property bequeathed to him, and if there be no forced heirs he is seized of right of the estate and no demand is required." In that case there were no forced heirs, and the court held that the rule announced in article 1607 did not apply to collateral heirs. Under article 1671 "the heirs can at any time take the seizin," etc. Here, however, "the heirs" have not applied for the seizin. The forced heirs of the deceased, to whom is reserved two-thirds of the succession, have made no application whatever. It is only the universal legatee, entitled only to one-third of the estate, who has obtained an *ex parte* order to be put in possession. She was not entitled to the order under article 1671, by virtue of which it was probably granted.

Article 1607 is the law applicable to the case at bar, and by virtue thereof these forced heirs were "seized of right," by the death of their father, "of all the effects of the succession, *and the universal legatee is bound to demand of them the delivery of the effects,*" etc., which has not been done.

Succession of Bellocq.

Our conclusion is that the order sending the universal legatee into possession was improvidently issued, and it should be annulled.

The executrix, by virtue of her office, owed duties to creditors and also to the forced heirs of the deceased which this court will not permit her to disregard in acting for her own personal interest and to their prejudice. She was bound to make a fair settlement with the creditors whom she placed on the account. And if she has not paid appellant the $1135 96 which she stated in the account she paid him, it would be a great wrong to permit her to enjoy the benefit of a judgment to that effect in the homologated account, and then, by an *ex parte* order, to carry off all the effects of the succession to the prejudice of creditors and heirs.

The case falls clearly within the express provisions of article 1607, and the universal legatee has not complied with the requirements thereof.

It is therefore ordered that the judgments appealed from, so far as they affect the appellant, be avoided and annulled, and it is further ordered that this case be remanded to be proceeded in according to law, appellee paying costs of appeal.

———

HOWELL, J., *concurring.* I concur in the conclusion in this case, on the ground that the creditor had the right to appeal from the judgment homologating the tableau to his prejudice, and the subsequent proceedings of the executrix, *as conducted,* to be put in possession, did not destroy that right. And as the order putting her in possession might, under the circumstances, impair his rights as creditor, he could have it reviewed on appeal.

———

LUDELING, C. J., *dissenting.* F. Bellocq died on the twenty-sixth of June, 1874. He left a will whereby he appointed his widow his universal legatee and executrix. This will was probated, and letters testamentary were issued. She filed an account which was opposed by one creditor, and, the opposition having been rejected, the account was homologated, and on the application of the universal legatee she was put into possession of the property. Several months after this, P. N. Canton, a creditor of the estate, obtained orders for appeals from the judgment homologating the account and from the judgment putting the legatee in possession. He alleges and assigns as errors that the account was homologated without proof as required by law, and that the widow could not be put into possession of the whole estate, as there were forced heirs, and the executrix had not administered the estate.

An heir has the right to demand possession of the estate at any time, subject only to the conditions that he give security for the payment of the debts, if the creditors demand it, and that he place in the hands of the executor a sufficient sum to pay the movable or particular legacies. C. C. 1671, 1012; 2 R. 382; 3 R. 349; 3 An. 705.

The judgment of the lower court having been executed, and therefore acquiesced in, they could not appeal from the judgment. 18 An., succession of Egana. If the debt of the appellant exists, he can demand it from the heir in possession, in a suit in the court of ordinary jurisdiction.

Mr. Justice Taliaferro concurs in this opinion.